UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/7/11
```

SECURITIES AND EXCHANGE
COMMISSION,

              Applicant,

- against -

THE COMMITTEE ON WAYS AND
MEANS OF THE U.S. HOUSE OF
REPRESENTATIVES and BRIAN SUTTER,

              Respondents.

**ORDER**

14 Misc. 193 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        In this action, the Securities and Exchange Commission (the "SEC") seeks an order enforcing administrative subpoenas issued to the Committee on Ways and Means of the U.S. House of Representatives and to Brian Sutter, the former staff director of the Committee's Health Subcommittee ("Respondents"). On November 13, 2015, this Court issued an order (the "Order") limiting the scope of these subpoenas, directing Respondents to comply with the subpoenas as limited, and instructing Respondents to submit a privilege log to the Court and the SEC describing documents that they believe are privileged.[1] (Dkt. No. 35) Respondents were directed to comply with the Order by December 7, 2015. (Dkt. No. 39)

        On November 30, 2015, Respondents filed a notice of appeal and a motion to stay the Order pending appeal. (Dkt. Nos. 40, 41) On December 4, 2015, the SEC filed a memorandum of law in opposition to the stay motion. (Dkt. No. 44) For the reasons stated below, Respondents' motion for a stay pending appeal will be granted.

---

[1] This Court assumes familiarity with the Order, in which the underlying facts and procedural history of this case are described in detail. (See Order (Dkt. No 35) at 2-10)

## DISCUSSION

I. **LEGAL STANDARD**

"A district court possesses the power to stay its own order during the pendency of an appeal of that order." In re A2P SMS Antitrust Litig., No. 12-CV-2656, 2014 WL 4247744, at *1 (Aug. 27, 2014) (collecting cases). Courts generally consider four factors in deciding a stay motion: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" Nken v. Holder, 556 U.S. 418, 426 (2009) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). "Likelihood of success and irreparable injury are the most 'critical' factors in this analysis . . . and a stronger showing on one of these factors can offset a weaker showing on the other." In re A2P, 2014 WL 4247744, at *2 (internal citations omitted).

"The Second Circuit has long recognized that the 'likelihood of success on the merits [factor]' . . . can be satisfied if there are 'serious questions going to the merits of the dispute and the applicant is able to establish that the balance of hardships tips decidedly in its favor." Id. at *2 (citing Citigroup Global Mkts., Inc. v. VCG Special Opportunities Fund, Ltd., 598 F.3d 30, 35 (2d Cir. 2010)) (emphasis in Citigroup Global Mkts.). The more lenient "serious questions" standard is "particularly appropriate when a district court is asked to stay its own order[.] . . . Asking the district court to . . . find that the movant is likely to succeed on the merits on appeal [after the court has rejected the movant's arguments] would require the district court to find that its own order is likely to be reversed – a standard that for practical purposes is rarely going to be satisfied." Id.

The SEC argues, however, that (1) the Second Circuit has applied the "serious questions" standard only in the context of preliminary injunctions; and (2) the "serious questions" standard is inapplicable where the movant "seeks to 'stay government action taken in the public interest pursuant to a statutory or regulatory scheme.'" (SEC Br. (Dkt. No. 44) at 4 (citing Citigroup Global Mkts., 598 F.3d at 35 n.4))

As to the first issue, other courts in this District have applied the "serious questions" standard to motions for a stay pending appeal. See, e.g., In re A2P, No. 12-CV-2656, 2014 WL 4247744, at *2; Blum v. Merrill Lynch & Co., Inc., No. 15 Civ. 01636(GBD), 2015 WL 6685357, at *1 (S.D.N.Y. Oct. 22, 2015). While "[a]n injunction and a stay have typically been understood to serve different purposes," Nken, 556 U.S. at 428, courts look to the same four factors in determining whether an injunction or stay should be issued, because "similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." Id. at 434; see also Citigroup Global Markets, Inc., 598 F.3d at 37 (acknowledging that the four-factor test for a stay pending appeal "overlap[s] substantially with the preliminary injunction standard").

As to the second issue, where a private party seeks to enjoin action taken by a "government agency charged with enforcement of a federal statute," courts in this Circuit have generally declined to apply the more lenient "serious questions" standard. See, e.g., AVCO Financial Corp. v. CFTC, 929 F. Supp. 714, 716-17 (S.D.N.Y. 1996) (plaintiff corporation seeking to enjoin Commodity Futures Trading Commission investigation of plaintiff); Lynch v. City of New York, 589 F.3d 94, 98-99 (2d Cir. 2009) (union representatives seeking to enjoin New York City Police Department policy requiring that a breathalyzer test be administered to any officer who causes an injury or death through a firearm discharge); Able v. United States, 44

F.3d 128, 130-31 (2d Cir. 1995) (members of the armed forces seeking to enjoin implementation of the "Don't Ask, Don't Tell" policy). The Second Circuit has explained that the more stringent "likelihood of success" standard is applicable in such cases, because "it is inappropriate for [a] court to substitute its own determination of the public interest for that arrived at by the political branches . . . ." Able, 44 F.3d at 132.

Here, however, there is no private party seeking to enjoin governmental action. Instead, two co-equal branches of government are the litigants, and each can claim to represent the public interest. Under the circumstances of this case, this Court concludes that the "serious questions" standard applies to Respondents' stay motion.

## II.     APPLICATION OF FOUR-FACTOR TEST

### A.     Serious Questions

A "serious question" exists where "there is no controlling Supreme Court or Second Circuit precedent on point and the only available guiding precedent does not cut decisively in either direction." In re A2P, 2014 WL 4247744, at *2. This is such a case. Indeed, there are no reported cases involving a like effort by a federal agency to seek enforcement of an administrative subpoena directed to Congress. Moreover, the Circuits are split on the issue of whether the Speech or Debate Clause provides a non-disclosure privilege for "legislative act" documents. (Order (Dkt. No. 35) at 52-63) In short, this case raises multiple issues for which no binding precedent is available.

In resolving the issues presented by the SEC's enforcement application, this Court was required to balance the Supreme Court's instruction to read the Speech or Debate Clause "broadly to effectuate its purpose," Doe v. McMillan, 412 U.S. 306, 311 (1973), against the principle that the Clause "does not protect 'all conduct relating to the legislative process.'"

4

United States v. Biaggi, 853 F.2d 89, 102 (2d Cir. 1988) (quoting United States v. Brewster, 408 U.S. 501, 515 (1972)) (emphasis in Brewster). Giving the Clause too narrow a reading would mean disrupting "the separation of powers so deliberately established by the Founders," United States v. Johnson, 383 U.S. 169, 178 (1966), while expanding its reach too far would mean immunizing conduct that was never meant to be protected from public scrutiny or legal accountability. See Brewster, 408 U.S. at 517 (privilege under the Clause "does not extend beyond what is necessary to preserve the integrity of the legislative process"). The Order reflects a careful calibration of these considerations, for which no legal template was available.

Under these circumstances, this Court concludes that the "serious questions" factor is satisfied here.

### B. Balance of Hardships

In seeking a stay pending appeal, Respondents must demonstrate that "the balance of hardships tips decidedly in [their] favor." In re A2P, 2014 WL 4247744, at *2 (emphasis in original).

#### 1. Irreparable Harm

"Irreparable harm exists 'where, but for [a stay], there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.'" U.S. S.E.C. v. Daspin, 557 Fed. App'x 46, 48 (2d Cir. 2014) (quoting Brenntag Int'l Chem., Inc. v. Bank of India, 175 F.3d 245, 249-50 (2d Cir. 1999)). Absent a stay, Respondents will be required to produce to the SEC all documents that this Court determined to be outside the scope of the Clause's protections. (Order (Dkt. No. 35) at 64-69, 76) Sutter will also be required to sit for a deposition, at which he would be questioned about, inter alia, the disclosure of information to Greenberg Traurig. (Id. at 64, 69 n.22) Respondents insist that these documents,

and the subject matter of Sutter's testimony, are protected by the Speech or Debate Clause. (See Resp. Br. (Dkt. No. 42) at 6) If Respondents produce the documents at issue to the SEC, or if Sutter testifies, they cannot "recoup the benefit of [the privilege] on appeal." In re Long Island Lighting Co., 129 F.3d 268, 271 (2d Cir. 1997).

In the context of privilege claims, the Second Circuit has recognized that compliance with a lower court's production order destroys the privilege right a party seeks to vindicate. Accordingly, denying review prior to compliance negates the privilege. See, e.g., In re von Bulow, 828 F.2d 94, 98-99 (2d Cir. 1987) ("Compliance with [an] order [to turn over privileged material] destroys the right sought to be protected"; thus, "to deny review [before compliance] is to deny the privilege."); In re The City of New York, 607 F.3d 923, 934 (2d Cir. 2010) (once allegedly privileged documents are produced, the producing party "cannot unsay the confidential information that has been revealed"); In re Sims, 534 F.3d 117, 129 (2d Cir. 2008) (granting a writ of mandamus as to district court order directing production of privileged information because the privilege "will have been lost if review must await a final judgment, prior to which [the allegedly privileged materials] are disclosed").[2]

The SEC argues, however, that Respondents are not at risk of irreparable injury, because the Order only requires the production of documents and testimony that are not subject to privilege. (SEC Br. (Dkt. No. 44) at 10-11) This argument misses the point, of course. Respondents contend that this Court erred in determining that certain of the documents and communications sought are not protected by the Speech or Debate Clause.

---

[2] Given that Respondents' claim of privilege is grounded in the Constitution, it raises even more significant questions than the common law issues presented in In re von Bulow (attorney-client privilege), In re City of New York (law enforcement privilege), and In re Sims, (psychotherapist-patient privilege).

This Court concludes that Respondents have satisfied the irreparable injury requirement.[3]

### 2. Injury to the SEC

"To the extent that the requested information is essential to the continued progress of . . . [an] [i]nvestigation, a stay of enforcement of the [November 13] Order may constitute substantial prejudice to the SEC." S.E.C. v. Finazzo, No. M18-304 (KMW), 2008 WL 1721517, at *4 (S.D.N.Y. Apr. 8, 2008); see also S.E.C. v. WorldCom, Inc., 452 F. Supp. 2d 531, 532 (S.D.N.Y. 2006) (denying stay motion because delay was contrary to the SEC's mission of "prompt enforcement"); United States v. Judicial Watch, Inc., 241 F. Supp. 2d 15, 18 (D.D.C. 2003) (explaining that "the interests of justice weigh heavily against granting a stay" because "[f]urther delay will only interfere with the ability of the IRS to conduct its audit"); United States v. Trenk, Civil Action No. 06-1004 (MLC), 2009 WL 1298420, at *5 (D.N.J. May 8, 2009) (finding that a stay would "substantially injure the Government" because it would "interfere with

---

[3] The SEC contends that the Order only "establishes a procedure for reviewing documents that Respondents claim are privileged," and therefore the Second Circuit may not have jurisdiction to hear an appeal. (SEC Br. (Dkt. No. 44) at 7 n.8)  In support of this argument, the SEC cites Jewish War Veterans of the U.S., Inc. v. Gates, 279 Fed. App'x 3 (D.C. Cir. 2008), in which the D.C. Circuit dismissed an appeal from a district court order requiring Members of Congress to turn over certain documents – which the Members argued were protected by the Clause – in response to a discovery request.

The SEC's argument is not persuasive.  Unlike in Jewish War Veterans, which dealt with a discovery order in a civil action, this is a subpoena enforcement proceeding.  Thus, the Order is this Court's "final decision," and the Second Circuit has jurisdiction to hear Respondents' appeal under 28 U.S.C. § 1291.  (See Notice of Appeal (Dkt. No. 40))

Moreover, the Order delineates what documents must be produced. (Order (Dkt. No. 35) at 64-70)  Unlike the district court in Jewish War Veterans, which acknowledged that its opinion "did not establish the brightest of lines, leaving room for disagreement as to which documents must be disclosed," Jewish War Veterans, 279 Fed. App'x at 4 (internal quotation marks omitted), this Court "endeavored to provide sufficient guidance to permit Respondents to produce unprivileged, responsive documents." (Order (Dkt. No. 35) at 69)

. . . the ability of the IRS to conduct this audit and the interest of the IRS in prompt assessment and collection of tax revenue"). "[M]ere delay in receiving information requested does not constitute substantial prejudice[, however,]" if the SEC can "pursue its investigation without immediate access to the requested information." Finazzo, 2008 WL 1721517, at *5 (citing E.E.O.C. v. Quad/Graphics, Inc., 875 F. Supp. 558, 560 (E.D. Wis. 1995)).

Acknowledging that Sutter has "'unique first-hand knowledge' about whether he communicated with anyone at Greenberg Traurig" about the subject of the SEC's investigation, see Order (Dkt. No. 35) at 76 (quoting Lederman v. New York City Dept. of Parks and Recreation, 731 F.3d 199, 203 (2d Cir. 2013)), Respondents are not the only source of information relevant to the SEC's investigation. To the contrary, lobbyists, securities analysts, traders, government agency personnel, and others likely possess information relevant to the question of whether trading on the basis of non-public information took place and, if so, who disclosed non-public information. (See Straub Decl. (Dkt. No. 3) at ¶¶ 10-14) Because the SEC can pursue its investigation through other sources, without "immediate access to the requested information," it has not demonstrated that a stay will cause "substantial prejudice." Finazzo, 2008 WL 1721517, at *5.

Finally, even assuming arguendo that the SEC's investigation is prejudiced by a stay, the balance of hardships still tips "decidedly" in Respondents' favor. While "memories . . . fade" and "documents [may] be lost or destroyed" as time passes, Judicial Watch, 241 F. Supp. 2d at 18, denying a stay might deprive Respondents of their constitutionally-protected claim of privilege under the Speech or Debate Clause.

The Court concludes that the balance of hardships favors Respondents.

C.  **Public Interest**

The SEC's ability to investigate violations of securities laws is an important public interest. See Treats Int'l Enterprises v. SEC, 828 F. Supp. 16, 18 (S.D.N.Y. 1993) ("'Congress endowed the Commission with 'broad powers' to conduct investigations in support of its statutory mandate to protect the public interest through prompt and effective enforcement of the federal securities laws.'") (quoting H. Rep. No. 1321, 96th Cong., 2d Sess. 4 (1980)). Moreover, the 2012 passage of the Stock Trading on Congressional Knowledge ("STOCK") Act, Pub. L. No. 112-105, 126 Stat. 291 (2012), which makes it illegal for Congressional employees and Members of Congress to trade on the basis of information that they learned as a result of their Congressional duties, demonstrates that there is a strong public interest in detecting and punishing such conduct. See Able, 44 F.3d at 131-32 (finding a significant public interest "where the full play of the democratic process involving both the legislative and executive branches has produced a policy in the name of the public interest embodied in a statute and implementing regulations").

There is also a strong public interest, however, in vindicating those provisions of our Constitution – including the Speech or Debate Clause – that establish a separation of powers. See, e.g., Johnson, 383 U.S. at 178 (describing the historical background for the Speech or Debate Clause). If Respondents' arguments are correct, requiring the production of documents and testimony referenced in the Order would violate Speech or Debate Clause protections. See Gravel, 408 U.S. at 616-17 (describing the Clause's role in maintaining co-equal branches of government).

This Court concludes that the public interest factor is neutral.

9

## CONCLUSION

Respondents' appeal presents "serious questions" about the scope and meaning of the Speech or Debate Clause, and Respondents face irreparable harm absent a stay. Accordingly, Respondents' motion for a stay pending appeal is granted.

Dated: New York, New York
December 7, 2015

SO ORDERED.

*Paul G. Gardephe*
Paul G. Gardephe
United States District Judge